■ MARIA WEGLARZ, as Administratrix of the Estate of THEODORE WEGLARZ, Deceased, Appellant, v. STATE OF NEW YORK, Respondent. (Claim No. 44084.) — STALEY, JR., J. Appeal from a judgment, entered June 28, 1967, upon a decision of the Court of Claims dismissing the claim for damages by reason of claimant's intestate's death by suicide after escaping from a State mental hospital. On November 21, 1963, Theodore Weglarz was found nude in his backyard screaming and yelling at anyone who came by. He was taken by the police to the Kings County Hospital. On December 4, 1963 he was committed as a mentally ill person to the Pilgrim State Hospital and was placed in a closed ward under the direct supervision of Dr. Manalac. On January 6, 1964 he was transferred to an open ward. On or about January 13, 1964 he disappeared. On May 11, 1964 his body was found in a wooded area on the hospital grounds. An autopsy was performed and the cause of death was listed as asphyxia due to suicidal hanging. This claim for damages against the State is based upon improper supervision, care, and surveillance of the decedent which is claimed to be the cause of his death. The Court of Claims determined "that the State's psychiatrist, based upon his personal interview with the decedent, the records that were available to him and the need for rehabilitation was within the confines of reasonability to permit the decedent to have open ward privileges. As indicated, the care, treatment and therapy, long established in similar cases as a part of the rehabilitation program of the alleged mentally ill persons, is to permit open ward privileges. In this case it is beyond the forseeability of the State's psychiatrist based upon his examination, to anticipate the claimant to take his life by a suicidal hanging." Dr. Manalac, the attending physician, had no authority to transfer a patient from a closed ward to an open ward. Such a transfer order could only be issued by the supervising psychiatrist at the hospital who, in this case, was Dr. Mogtader. On December 26, 1963 Dr. Mogtader interviewed the decedent, and determined that his condition showed that he had considerably improved. Dr. Mogtader found the decedent to be normal, friendly, co-operative, and a good worker in the ward, and that the decedent fully realized that he had been sick, and had talked about his past hallucinations. In arriving at his conclusion to transfer the decedent to the open ward, Dr. Mogtader also had before him the certification records from the Kings County Hospital, as well as the records of the Pilgrim State Hospital. Nothing in the records revealed a suicidal tendency. The claimant contends that the State was negligent in that a full transcript of the Kings County Hospital record was not obtained, and that the State was further negligent in that a history was not obtained by Dr. Mogtader from the decedent's spouse, and that either of these histories would have alerted Dr. Mogtader to a suicidal tendency. The claimant further contends that the failure of Dr. Manalac to record the history which he obtained from the decedent's wife, and his failure to record symptoms of extreme agitation exhibited by the decedent shortly before his escape, constituted negligence on the part of the State. In this regard the claimant attempted to prove negligence

through the testimony of a Dr. Cerulli who testified that it was not good medical practice to rely only on the certification records; that these records do not reveal the attempts made by the decedent at self mutilation; that these attempts indicated a suicidal tendency and were reflected in the complete records of the Kings County Hospital. Dr. Cerulli had never examined the decedent and testified solely from the hospital records. He admitted that he did not see any overt act or attempted suicide by the decedent in his review of the records of the Pilgrim State Hospital, and that a determination as to whether a patient should be kept in a closed ward, or be placed in an open ward comes down to a question of medical judgment by the treating physician. Dr. Mogtader testified on cross-examination, after reading part of the record of the Kings County Hospital which indicated that the decedent had inflicted wounds to his forehead and to the inner portion of his thigh, that knowledge of such self punishment would not have changed his diagnosis or his recommendation for open ward treatment. There was no showing of prior suicidal tendencies on the part of the decedent and the decision of the supervising psychiatrist " to give him an honor card was based on the improvement of the patient; the fact that he was well " and was not negligently made. The decision to place the patient in an open ward was a medical judgment. Liability on the part of the State does not arise if such judgment was, in fact, erroneous. There was no further evidence that the hospital authorities had any reason to anticipate that the decedent would commit suicide. (*Thompson* v. *State of New York,* 30 A D 2d 914; *Kardas* v. *State of New York,* 24 A D 2d 789; *Taig* v. *State of New York,* 19 A D 2d 182; *Kubas* v. *State of New York,* 198 Misc. 130, affd. 278 App. Div. 887.) Judgment affirmed, without costs. Gibson, P. J., Herlihy, Reynolds, Aulisi and Staley, Jr., JJ., concur in memorandum by Staley, Jr., J.